## JOHNSON *v.* STONE.

An officer, who had returned on an execution the taking of a yoke of oxen and a yoke, cannot be permitted to testify, on a trial in trespass, that he did not take the yoke. He may, however, be permitted to amend his return according to the facts.

Without proof of authority from the father, a son has no more right than a stranger, to lend his father's goods.

A party cannot justify taking the property of a third person, as an assistant of a sheriff, unless the property is in fact taken by the officer under his process. It is no justification of such taking, that the assistant supposed, from the conduct of the officer, that the property had been attached.

TRESPASS, for taking and carrying away the plaintiff's yoke.

The general issue was pleaded, with a brief statement, that the defendant took the yoke by license of the plaintiff, and that at the Court of Common Pleas, holden, &c., the defendant and N. Stone recovered judgment against the plaintiff and W. Johnson, for $28.05 costs, &c., and execution was duly issued therefor, and delivered to L. Johnson,

deputy-sheriff, for service, who on the 19th of January, 1858, duly levied upon the yoke mentioned, &c., and proceeded therewith according to law, for the purpose of satisfying said execution by a sale thereof, till the 2d of February, 1858, when the plaintiff paid L. Johnson the amount of said execution, and the legal costs thereon, and the said L. Johnson discharged said property from said levy, and the defendant then offered, and has been since ready and willing to deliver said yoke to the plaintiff, but he refused to receive it, which is the same trespass, &c.

The taking of the yoke was proved as alleged. The defendant introduced a copy of the judgment and the execution described in the brief statement, and the return of L. Johnson, deputy-sheriff, upon the execution; that on the 19th of January, 1858, he levied upon a yoke of oxen (*and one ox-yoke*), as the property of said I. W. Johnson, and on the same day advertised said oxen for sale, on the 26th of January, &c., by posting up notices, &c., and on said 26th of January he adjourned said sale to the 2d of February, at the same place and hour; and on the 1st day of said February said I. W. Johnson paid to him the amount of said execution, and his costs thereon, and he thereupon discharged said oxen (*and said yoke*) from said levy.

The words (*one ox-yoke*), and (*and said yoke*), were interlined, written with different ink, and evidently at a subsequent time. L. Johnson testified that when he took the oxen they were turned out to him by the defendant, Stone, and he levied upon them by virtue of said execution. They were ample security for the payment of the execution, but one of them seeming to be wild, he borrowed a yoke of the plaintiff's son, a lad of fourteen, to drive them away with. The plaintiff was absent from home. After getting permission of plaintiff's son to take the yoke, he, the officer, directed Stone to put it on the oxen, and he did so, and the oxen were thus driven

to Stone's barn, where they were kept until they were discharged by the officer, after payment of the execution. He advertised the oxen, as set forth in the return, but did not advertise said yoke, for the reason that he had not taken it upon the execution. He did not levy upon the yoke at all, until the 29th of January, when the defendant came to him and desired him to advertise the yoke for sale upon the execution, and he did so, and shortly after said February 1st he altered his return by making the interlineations aforesaid. Said L. Johnson then moved the court for leave to amend his return upon the execution according to the facts; and, upon presenting satisfactory evidence, he was allowed to amend the return, so as to correspond substantially with his testimony. Stone, the defendant, testified that he supposed that L. Johnson, when he took the yoke, levied upon it by virtue of the execution, as much as he did upon the oxen, and that he only took the yoke by said Johnson's directions.

The plaintiff testified that he never gave his son any orders, permission, or liberty to lend his yoke, or any other property of his to any one, and his son testified that he never gave Stone, or the officer, any leave to take the yoke.

After the evidence was all in, the defendant moved the court for a nonsuit, or that a verdict be ordered for the defendant, on the ground that the evidence which tended to show that the officer did not levy upon the yoke, was incompetent, irrelevant and immaterial; but the court denied the motion.

The defendant asked the court to instruct the jury: (1.) That if they should find that the defendant supposed and understood, when the yoke was first taken, from the acts and declarations of the officer, that the yoke was then' levied on by the officer as well as the oxen, the action could not be maintained: (2.) If the jury should find that the plaintiff's son did lend the yoke to the officer,

this would defeat the action : (3.) Though the officer did not intend to levy the execution, and did not levy it upon the yoke at the time when it was taken, still, inasmuch as the officer had the execution in his hands, and had possession of the yoke, and the legal right to levy upon it as well as the oxen, he might lawfully justify taking the yoke, by returning the same as levied upon by virtue of the execution on said 19th of January : (4.) Inasmuch as the officer had justified the taking of the yoke, by returning it as levied upon by virtue of the execution at the same time the oxen were taken, this return of the officer was conclusive between these parties, and operated as a justification for the defendant in regard to the trespass alleged against him; but the court declined to give such instructions.

The court instructed the jury, upon the question of license, that if they should find that the plaintiff's son lent the yoke to the officer at the time it was first taken, they might inquire and find whether the son had any authority or permission from the plaintiff thus to lend it, or whether the plaintiff had ever, before this suit, ratified or assented to the lending; in which case their verdict should be for the defendant.

If they should find no such license from the plaintiff, they might inquire and find whether the officer did levy upon said yoke by virtue of said execution, on said 19th of January. If he did so, this suit could not be maintained. If he did not, the action could be maintained, and they might find their verdict accordingly.

The defendant moved to set aside the verdict returned for the plaintiff, on account of said instructions, and refusals to instruct as requested by the defendant.

*Burns & Fletcher*, for the plaintiff.

*Benton & Ray*, for the defendant.

Johnson v. Stone.

BELL, C. J. The return of a sheriff of matters material and proper to be returned, is conclusive between the parties to the suit, so that it cannot be contradicted for the purpose of invalidating the sheriff's proceedings, or defeating any rights acquired under them. *Messer* v. *Bailey*, 31 N. H. 18. The officer here returned that he had levied upon a yoke of oxen and a yoke, and retained the same until the debt was paid, when he discharged them from the levy. The suit here is between the plaintiff and defendant in the execution, and the testimony of the sheriff was put in to show that he did not attach the yoke, but that his return was false in that particular. The return, as it was at first offered in evidence, was conclusive that the yoke was attached, and it furnished a complete justification of the defendant for the part he took in driving away the oxen with the yoke upon them. It was not competent to impeach this return by extrinsic evidence, and it is immaterial that it was the evidence of the officer himself that was introduced to show that the return was false.

After the return was amended, it furnished no evidence that the yoke was levied upon at all, and the sheriff and the defendant of course stood in the position of mere wrong-doers, taking the yoke without the slightest color of legal authority from the execution. By this amendment the incompetency of the officer's testimony was entirely obviated.

. The charge, as to the supposed permission given by the boy to the officer to take the yoke, was correct. A son has no authority, as such, to lend his father's property, and there is no presumption that such authority has been given to a son. It may be shown that authority to lend tools and the like, has been given to a son expressly, or such an authority may be inferred from the conduct of the father, tending to show that he reposed such confidence and intrusted such discretion to the son, as by showing

that on other occasions the son had lent the father's property of a similar kind, and the father, upon the facts coming to his knowledge, approved what he had done; but without such proof the son stands in the same position as a stranger.

As there was no evidence of any such authority, the charge of the court, that the jury might find whether the boy had any such authority or permission from his father, was erroneous; but of this the defendant cannot complain, since its only fault is that it was too favorable to himself.

The charge requested, that if the defendant supposed and understood, from the acts and declarations of the officer, that he had seized the yoke as well as the oxen, he would be justified, was not supported by the evidence. The proof is that the defendant, Stone, by the direction of the officer, put the yoke on the oxen himself, and drove them away with it. There is nothing in the case showing any act or declaration of the officer tending to mislead him, or to give him the erroneous impression that the yoke had been attached. There can be no doubt that it is the duty of every man, who assumes to interfere with the property of a third person, to ascertain whether he is acting under due authority, and he cannot excuse himself to any one who has been injured by his conduct, by the suggestion that he supposed he was acting under proper authority. His suppositions are not matters of inquiry, nor in any way material, if his conduct is illegal.

It could not be contended that a creditor, or other assistant of an officer, acting in good faith, and intending only to act in the legal discharge of a duty, should be involved in any responsibility for illegal and unauthorized acts of the officer in which he took no part, and to which he did not assent. If, for instance, the defendant went with the officer for the purpose of assisting him to levy on property for the payment of his debt, and he directed the levy

to be made on the oxen alone, and he did nothing, and assented to and approved of nothing which was done by the officer relative to the yoke, he would not be responsible for the officer's conduct.   But that is not this case. The defendant had made himself a trespasser by his own personal acts, and his justification must depend upon the question, whether the officer, in whose aid he acted, can be justified under his process ; and not upon any ideas or impressions of his, either as to what was done by the sheriff, or his authority for doing it.

The return, as amended, does not show that the yoke was taken on the execution, and the evidence of the officer shows that it was not so taken.   It is entirely immaterial that the officer had the authority to take it on the execution, if he did not so take it.

As the act of the defendant is a trespass, and no justification is shown, there must be

*Judgment on the verdict.*